IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERCOLE MIRARCHI, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SENECA SPECIALTY | : | |
| INSURANCE COMPANY, | : | |
| Defendant. | : | No. 10-3617 |

**M E M O R A N D U M**

PRATTER, J.                                                                                           JULY 22, 2011

After winnowing the disputed discovery issues in this bad faith insurance litigation, the Court has one remaining issue to address: the discoverability of loss reserve information. Plaintiff Ercole Mirarchi seeks to compel Defendant Seneca Specialty Insurance Company ("Seneca") to produce unredacted versions of several documents related to the handling of the insurance claim he filed after a fire damaged his pizzeria and the apartments above it. Seneca claims that the redacted information, which largely relates to the setting of loss reserves, is protected by work product privilege and has no relevance to the claim at hand. The Court held oral argument regarding the parties' discovery disputes on June 23, 2011 and has since received supplemental briefing from each party specifically addressing the loss reserve issue, as well as 38 disputed documents for *in camera* review. The majority of the redactions of the documents presented to the Court for *in camera* review conceal the specific amount of loss reserves assigned to Plaintiff Mirarchi's claim.

I.    **Work Product Doctrine**

Seneca argues that all loss reserve information redacted in the 38 *in camera* documents is protected from discovery by the work product doctrine. Under the work product doctrine, mental

impressions and opinions of attorneys and their agents are protected from discovery when they are prepared in anticipation of litigation, as distinguished from materials prepared in the ordinary course of business.  *See U.S. v. Nobles*, 422 U.S. 225, 238 (1975); *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000).  Here, none of the documents were prepared by or for a lawyer, and, aside from a blanket statement that the documents were prepared in anticipation of litigation, the documents themselves, with one exception,[1] give no indication that they were prepared outside of the ordinary course of business.  Thus, Defendant's claim for work product protection must fail.

## II.     Relevance

In addition to arguing for protection under the work product doctrine, Seneca argues that the redacted loss reserve information is irrelevant.  Despite the Court's specific questions at oral argument regarding the relevance of loss reserve information, Mr. Mirarchi focused his supplemental briefing almost exclusively on the issue of whether the information is protected by the work product doctrine, and essentially assumed that the information is relevant to his claim.  *See* Pl.'s Mem. of Law Opposing Def.'s Claim of Privilege for 26 Documents ("Pl.'s Mem."), at 2 (calling the loss reserves "factual internal estimates of the plaintiff's loss" and stating that they are therefore "undeniably relevant" to his claim).

The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1).  Although the discovery rules should generally be given

---

[1] The Court finds that the information redacted from the document at tab 23 of the *in camera* documents is protected by the attorney-client privilege and therefore will not compel Defendant to produce an unredacted copy of that document.

broad and liberal treatment,[2] these rules, like all of the Federal Rules of Civil Procedure, are subject to the injunction of Rule 1 that they "be construed to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.  In keeping with this injunction, the relevance requirement of Rule 26(b)(1) must be "firmly applied." *Herbert v. Lando*, 441 U.S. 153, 177 (quoting Fed. R. Civ. P. 26(c)).  Relevance is defined in Rule 401 of the Federal Rules of Evidence, which states that "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

A loss reserve, sometimes called a claim reserve or case reserve, is "the insurer's own estimate of the amount which the insurer could be required to pay on a given claim."  17A Couch on Ins. § 251:29.  State regulations require insurance companies to set reserves, but do not dictate precisely how those reserves are set.  A reserve is a "preliminary estimate of potential liability that does not necessarily take into account all of the factual and legal components that make up a particular case, and that may have some impact on the claim and its value." Timothy M. Sukel & Mike F. Pipkin, *Discovery and Admissibility of Reserves*, 34 Tort & Ins. L.J. 191, 193 (Fall, 1998).

Individual case reserves are generally set by the claims department, but who sets them varies by company, and the criteria used to set them also vary widely depending on the company and the type of insurance.  *See* Robert J. Prahl, *Setting Realistic Reserves – Projecting the Company's Future Obligations*, Am. Ass'n of Ins. Servs., http://aaisonline.com/articles/RealisticResv.html (last visited July 21, 2011).  The person

---

[2] *See Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Schlagenhauf v. Holder*, 379 U.S. 104 (1964); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

responsible for setting the claim reserve may consider legal liability, projected legal expenses, extent of injuries, actuarial considerations, and other factors.  When a reserve is set also varies.  Some companies require that reserves be established "immediately after the initial investigation is completed or within 30 days from notice of claim." *Id.*  Others allow more time for investigation and set an average reserve until then.  Because of the multitude of factors which may be considered in setting loss reserves, this Court has previously stated that "there is a 'tenuous link between reserves and actual liability.'" *Safeguard Lighting Sys. v. Am. Specialty Ins. Co.*, No. Civ. A. 03-4145, 2004 WL 3037947, *3 (E.D. Pa. Dec. 30, 2004) (quoting *Fid. & Deposit Co. of Md. v. McCulloch*, 168 F.R.D. 516, 525 (E.D. Pa. 1996)).

As to the relevance of loss reserve information, courts usually hold that it is irrelevant and therefore not discoverable.  In bad faith cases, the question is closer, however. On the one hand, in *N. River Ins. Co. v. Greater N.Y. Mut. Ins. Co.*, 872 F. Supp. 1411 (E.D. Pa. 1995), the court permitted discovery of loss reserves when the issue was whether the insurer acted in bad faith in failing to settle a case within its $1 million policy limits when the case later resulted in a $5,796,000 judgment.  The court reasoned that the amount of the reserves shed light on the insurer's assessment of the case's settlement value and that therefore the reserve information could be relevant to whether the insurer acted in bad faith during settlement negotiations.  *Id.* at 1412.  *See also Maiden Creek T.V. Appliance, Inc. v. Gen. Cas. Ins. Co.*, Civil Action No. 05-667, 2005 U.S. Dist. LEXIS 14693, *3-4 (E.D. Pa. July 21, 2005).

On the other hand, in *McCulloch*,168 F.R.D. 516, the court refused to allow discovery of reserve information, even in relation to a defendant's bad faith counterclaim.  The defendant sought discovery of loss reserves in a case in which his insurance company accepted the duty to defend some actions but reserved its rights to determine whether or not others were covered.  The

court distinguished *North River*, in which liability was undisputed and reserve information might provide insight into the company's mind set in refusing to settle the case, from the case before it, in which liability was disputed and the level of reserves would likely reveal no more than that the cost of defending the actions rose as time passed. *Id.* at 525. Thus, even in bad faith cases, the relevance of the loss reserve information is not a foregone conclusion. *See also Robinson v. Hartford Ins. Co.*, No. Civ. A. 03-5618, 2004 WL 1090991, *1 n. 1 (E.D. Pa. May 11, 2004) (holding that the plaintiff was not entitled to discover reserve information without a showing of good cause); *Safeguard*, 2004 WL 3037947, at * 3 (holding that loss reserve information was not relevant and therefore not discoverable as to plaintiffs' bad faith claim).

      Here, Plaintiff asserts that loss reserves are "factual internal estimates of plaintiff's loss." Pl.'s Mem., at 2. As other courts have recognized, however, reserves "do not normally entail an evaluation of coverage based upon a thorough factual and legal consideration when routinely made as a claim analysis." *Ind. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 117 F.R.D. 283, 288 (D.D.C. 1986). In *North River*, the amount of the reserve set could potentially shed light on the insurer's assessment of the settlement value of the case and thereby provide a contrast to the numbers actually put forth in settlement negotiations. Here, no such analogy can be drawn between the amount of loss reserves set and the "factual internal estimates of plaintiff's loss." Plaintiff, rather, has information regarding the "factual internal estimates" of his loss by way of estimates provided by the various claims adjusters and appraisers who visited his business. Thus, stripping away Plaintiff's assumption of what loss reserves represent, no argument for the relevance of the amount of the reserves remains.

      However, the facts considered in setting the reserve amount may potentially be relevant to

Mr. Mirarchi's bad faith claim.  For instance, to the extent that employees or agents of Seneca discussed the value of Mr. Mirarchi's claim or other factual information regarding the claim in connection with setting the reserves, such information may potentially be relevant to Mr. Mirarchi's claim of bad faith.  Thus, the Court will order Seneca to produce unredacted copies of the non-privileged documents provided to the Court for *in camera* inspection to the extent that those documents contain information other than specific amounts set for loss reserves.  The Court cautions that this ruling in no way implies that such information will be admissible at trial.

      An appropriate Order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE