# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ercole A. Mirarchi, | ) | **CASE NO.'s** |
| **Plaintiff,** | ) | |
| | ) | DC No. 2:10-cv-03617-GP   – Opinion filed on March 22, 2013 |
| vs. | ) | USCA NO.: 13-2[ ]   – Opinion filed on April 29, 2014 |
| | ) | |
| Seneca Insurance, | ) | FEB 19 2013 |
| **Defendant.** | ) | |

KATE _____ Clerk
By _____ Dep. Clerk

## PLAINTIFF'S REBUTTAL OF DEFENDANT'S OPPOSITION

AND NOW, comes the Plaintiff to rebut statements made in Defendants

## OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION.

There is no merit to the Defendants Opposition claim of harassment. The records in

question are not true, and they were falsified by the Defendants before being submitted and used

in this Court. Marshall & Swift, who maintains a data-warehouse of *material cost data*, will not

be able to replicate these records, nor will they have transaction receipts related to the purchase

and development of these records. This is why the Defendants have to rely on the Court, once

again, to prevent Mirarchi from confirming this, so they can continue to get away with the

falsified record crimes they committed against Mirarchi here in this Court, which does cover up a

large amount of Accounting fraud, some of which is akin to counterfeiting, at a minimum,

$2,239.4 billion dollars, which to date the Court, USDOJ, FBI, SEC and even Congress all appear

to be turning a blind eye to, and this is concerning considering how little it takes to confirm it.

Mirarchi's Rebuttal Responses are as follows:

1.   No Rebuttal Response.
2.   No Rebuttal Response.

3.      Authorities choosing not to come forward to confirm or deny if there was an undisclosed

agreement of some type with the Defendants is relevant to Mirarchi's claim, for the reason a

multiyear (starting in 2005) multiagency (USDOJ, FBI, SEC) review of the Defendants

Reinsurance Accounting was conducted, then mysteriously dropped by the USDOJ and FBI

around 2007, and later by the SEC in 2009 for unknown reasons likely related to another

matter.  And, because *no action* was taken, this allowed the Defendants to continue operating

unchecked, where they harmed policyholders, like Mirarchi, which continues until this day.

As the Court was made aware, in his 1st motion for relief, Mirarchi showed the Court how

every one of the Defendants Property and Casualty Reinsurance Treaty No.'s interrelates with

the total loss reserve and ACV low-ball, non-negotiable, and SHAM repair estimate created

for his building loss, which forced a lengthy and unnecessary insurance appraisal process.

In that motion, the Court was also made aware in another matter derived from this one,

Mirarchi had a brief opportunity to review one of the Defendant's Reinsurers files.  It was at

this time where he learned the Defendants Custom Reinsurance Treaty No. 1142, **Ex. A.**

identified as the only Reinsurance Treaty associated with Mirarchi's insurance policy and

payout of his loss did not exist and wasn't in the Exhibit listing every Reinsurance Treaty No.

covered under the signed agreement between the Defendants and their Reinsurers (Westport-

re now a part of Swiss-re, Ge-re now Maiden-re owned by AMTrust, and Transatlantic-re).

The only Property & Casualty Reinsurance Treaty No.'s identified in the Exhibit attached

to the Reinsurers agreement with the Defendants were Reinsurance Treaty No.'s 1774/1775,

2134, 2178/2179, and 2294.  Mirarchi also observed how other records listed in that file

showed Reinsurance Treaty No.'s 1774/1775, and 2178/2179 to be layers of the same, which

he refers to as a Pair.  How all of the information above is related to Mirarchi's claim, is this

Reinsurance Treaty agreement between the Defendants and their Reinsurers was signed in 2007 and was relatively new at that time, which just happens to be around the same time the Reuters investigative news report uncovered the USDOJ and FBI's investigation into the Defendants Reinsurance Treaty Accounting Irregularities was mysteriously dropped.

This concerns Mirarchi for the reason his analysis shows when you combine all of the highest Pair values for each Reinsurance Treaty No. into an Arithmetic equation, shown below, it miraculously equals the Defendants mysterious Custom re-Treaty No. "1142", which is no coincidence and it is deceptive.

| Equation | Value | Description |
|---|---|---|
| $((2.179/2.294)/(1.775/2.134)) =$ | $1.142$ | , is equal to Fairfax's **"Custom"** i.e. **"non-traditional"** i.e. **"Finite"** re-Treaty No. **"1142"**, <u>Seneca Discovery file pg. 5</u>. |
| $((2.179/2.294)/(1.142/2.134)) =$ | $1.775$ | , is equal to Fairfax's re-Treaty No **"2294"**. |
| $((1.142/2.179)*(1.775*2.294)) =$ | $2.134$ | , is equal to Fairfax's re-Treaty No. **"2134"**. |
| $((1.142/2.134)*(1.775*2.294)) =$ | $2.179$ | , is equal to Fairfax's re-Treaty No. **"2179"**. |
| $((2.179/1.142)/(1.775/2.134)) =$ | $2.294$ | , is equal to Fairfax's re-Treaty No. **"1775"**. |

He also observed, how the square root of the 5th equation listed in the series above equals the difference between his total insurance policy limits, less the sum of the Defendants builder's repair estimate for his building loss and what the Defendants initially, on day one, forecasted for Mirarchi's Contents and Business Income losses, **Ex. B**. This wasn't only an act of bad faith, it was, at that time, an unknown act of misconduct directly related to the Defendant's fraudulent Reinsurance Treaty Accounting practices, which I will say again, in 2007 and once again in 2009, Authorities took no action upon, likely due that undisclosed deal with the Defendants regarding another matter unrelated to this one, where in exchange for information, Authorities agreed to turn a blind to the Defendants criminal Accounting practices. This is the reason why this analysis and the news articles listed in his motion for reconsideration are related and relevant to Mirarchi's claims, and the Court should take notice that the only way this can be proven, is with Math.

| | | |
|---|---|---|
| $(((1.775/2.134)/(2.179/1.142))^2) =$ | 0.190032 | , is numerically equal to (655,000 – 464968) = **190,032**. Note: Total Insurance policy coverage was (600,000 Building, 25,000 Contents, 30,000 Business Income) = 655,000. |
| $(0.655000-(((1.775/2.134)/(2.179/1.142))^2)) =$ | 0.464968 | , is equal to Fairfax's Insurer (Seneca) Builder (Michael E. Trevisan Esquire) **lowball and untrue "409,968"** repair estimate for Mirarchi's loss, plus 25,000 Contents and 30,000 Business Income, which totaled to **464,968**. |

Also notice, the equation below is a variation of the 2nd equation listed in the series of equations at the top of page 3, only the Arithmetic function was changed from division to multiplication, which produces a result numerically equal to the *product of "Pi" and "Phi"* (Phi being another name for the Golden Ratio), which was discussed in his 3rd Motion for Relief, document #99, page 19, starting at paragraph 38, and the result in the equation below, is also no coincidence.

| | | |
|---|---|---|
| $((2.179/2.294)* (1.142/2.134)) =$ | 0.50832 | , is numerically about equal to the product of "**Phi**" multiplied by "Pi", (1.61803399*3.14159) = **5.0832**. |

Also notice, in the series of equations below, which is a variation of the series of equations listed at the top of page 3, only in this series the lowest Reinsurance Treaty No. Pair value is used, which not only produces a value equal to the Defendants mysterious "Custom" Reinsurance Treaty No. "1142", the inverse of it is numerically equal to the Defendants Yearend 2007, which is beginning Year 2008 "8,755.8" Bonds classified as available for sale, which also is no coincidence and it is also deceptive.

| | | |
|---|---|---|
| $((2.178/2.294)/(1.774/2.134)) =$ | 1.1421 | , is equal to the inverse of Fairfax's 2008-Q1 page 7, Dec. 31, 2007 "**8,755.8**" Amortized cost or their bonds Classified as available for sale, (1/0.87558) = **1.1421**, in addition to being about equal to Fairfax's "Custom" e-Treaty "**1142**". |
| $(1/((2.178/2.294)/(1.774/2.134))) =$ | 0.87558 | , is equal to Fairfax 2008-Q1, page 7, Dec 31 2007 "**8,755.8**" |
| OR $((1.774/2.134)/(2.178/2.294)) =$ | 0.87558 | "Amortized cost" of Bonds Classified as available for sale. |
| $((2.178/2.294)/(1.142/2.134)) =$ | 1.774 | , is equal to Fairfax's re-Treaty No. "**2294**". |
| $((1.142/2.178)*(1.774*2.294)) =$ | 2.134 | , is equal to Fairfax's re-Treaty No. "**2134**". |
| $((1.142/2.134)*(1.774*2.294)) =$ | 2.178 | , is equal to Fairfax's re-Treaty No. "**2178**". |
| $((2.178/1.142)/(1.774/2.134)) =$ | 2.294 | , is equal to Fairfax's re-Treaty No. "**1774**". |

The Court should also take notice if you multiply a variation of the 1st equation listed in the series at the top of page 3, by the "601118" reconstruction cost hidden under the guise of the 2nd untrue MSB-BVS-Express Report, <u>Seneca 1398-1401</u>, it equal's the Defendants 12-31-2007 (End of 2007-Q4), i.e. 1-1-2008 (Start of 2008-Q1), \$2,170.8 debt, which also is no coincidence.

$$(((((1.775/2.134)/(2.179/1.142))^2)^2)*60.1118) = \quad 2.170\underline{8}$$

, is equal to Fairfax's 2008-Q1, pg 12, Dec. 31, 2007, i.e. Jan 1, 2008, **"2,170.8"** Total Debt.

Lastly, the Defendants Attorneys deny Seneca Insurance's Parent, Crum & Foster, and its owner Fairfax Financial is not a part of the collective group who through *shared service agreements* administered Mirarchi's insurance policy, managed its premiums and the claim adjustment of his loss, which Mirarchi disputes for the reason Seneca's Corporate Designee, Greg Crapanzano's deposition statements show he was not a Seneca Specialty, nor was he a Seneca Insurance Employee at the time he supervised their adjustment of Mirarchi's loss. Mr. Crapanzano was employed and paid by another Crum & Foster Subsidiary, US Fire, and clearly assigned to Seneca Insurance specifically to manage their adjustment of his loss. **Ex. C**. (Page 28 lines 11-24, Page 29 Lines 1-24, Page 30 Lines 1-24, Page 31 Lines 1-14).

4.      See <u>Paragraph 3</u>, Rebuttal Response.

5.      The grouping of news articles and one interview is relevant to this matter for the reason it supports every statement Mirarchi has made throughout his motions for relief where he asserts leadership in our Government, Justice, and Regulatory Authorities were aware of a large amount of Accounting fraud taking place; they were also aware common people will be harmed, or would soon be victims to the criminal acts related to Accounting fraud, and for unknown reasons, they ignored it, which is occurring once again here in this litigation.

The Courts, SEC, USDOJ, FBI and even Congress to some degree are all aware of the Accounting fraud and Shadow Accounting scheme uncovered here in this litigation, and the

criminal acts that took place to cover it up, which is also relevant to this claim, for the reason

he the uncovered the "501171" value hidden under the guise of the untrue MSB-BVS-Report,

Seneca 1395-1396, was found in another well-known and Politically connected Business

Mogul's financial statement reporting, and there is a strong likelihood a majority of high net

worth individuals and large Corporations, whether Public or Private, who made their fortunes

using structured finance in the mid-1990s through 2008, likely to present day, used engineered

leveraging rooted in Sacred Geometry/Ancient Math, and a lot of it was akin to counterfeiting.

6.      No Rebuttal Response. The numbers and calculations speak for itself.

7.      The image provided is from the MSB-BVS-Express building appraisal, Seneca 1395-
1396, which the Defendants sent to Mirarchi after the close of discovery to overt scrutiny,
and to the Court as an Exhibit in support their Summary Judgment Statement of Fact #50.

8.      Even though the Court and the 3rd Circuit Appeal Court past decisions were unpersuaded
by many calculation errors listed in several of the reports associated with the Defendants
underwriting, repair estimating and depreciation of Mirarchi's loss, this does not disprove the
fact calculation and or technical errors exist in these records that are improbable using highly
developed application software, which is credible evidence to show records were falsified,
and why Mirarchi is asking the Court for reconsideration of its decision.

9.      The incorrectly formatted "3,150" building square foot total is the only value listed on
that report summary line not in bold font, **"3150"**, which is a red flag. Even if a reason is
made for the calculation errors, this particular error does shows the record in question is in
fact untrue. Additionally, the incorrectly calculated **"159.00"** cost per square foot amount,
which should read as **"159.10"**, is the only value listed on that summary line and in the entire
report not rounded to the nearest dollar, **"159"**. This also supports that record is untrue.

Additionally, it is dishonest for the Defendants not to admit they hired the H&S Loss Control Co. to come out and inspect Mirarchi's property on their behalf, as well as it is also dishonest for the Defendants not to admit Mirarchi provided them with a copy of his Building Loan Appraisal, and a copy of his current years property tax assessment records that were submitted along with his insurance application, which both contained the true square foot measurements for his building.

10.   See rebuttal Response for Paragraph 8.

11.   To say Mirarchi's calculations are speculative isn't correct.  What was submitted to the Court is a small part of a much larger analysis.  Below is another, of many calculations that interrelate with the ones listed in Paragraph 11 of Mirarchi's motion for reconsideration.  As these calculations are reviewed, he asks the Court to keep in mind his insurance policy is part of the "4,306.6" Ceded Reinsurance Contracts, and he asks the Court to take notice when the Defendants mysterious "Custom" Reinsurance Treaty No. "1142", which is not identified in their agreement of coverage with Reinsurers, is swapped out with the Defendants "1,141.6" Assets for their Group-re unit, each equation result in the series below is exact to the value it is being compared to in the comment section for each line, and it is not a coincidence.

| Equation | Result | Comment |
|---|---|---|
| $(\sqrt{9523.6}/4360.6) =$ | 0.0223797 | , is numerically equal to (501171/2239.4) = **223.797.** |
| $(\sqrt{9523.6}/(50.1171/2239.4)) =$ | 4360.**6** | , is equal to Fairfax's 2008-Annual, page 43, Dec. 31, 2007 **"4,360.6"** Ceded reinsurance contracts at fair value. |
| $(((50.1171/2239.4)*4360.6)^2) =$ | 9523.**6** | , is equal to the sum of Fairfax's **"1141.6"** Assets for Group-re and the highest pair re-Treaty No.'s, (1141.6+1775+2134+ 2179+2294) = **9523.6.**  Also note, the inverse of 9523.6 is numerically equal to the Defendants **"105"** leverage factor, (1/0.95236) = **1.05.** |
| $((\sqrt{9523.6}/4360.6)*2239.4) =$ | 50.117**1** | , is equal to the **"501171"** Reconstruction Cost value from the untrue MSB Report, Seneca 1395-1396. |
| $(50.1171/(\sqrt{9523.6}/4360.6)) =$ | 2239.**4** | , is equal to Fairfax's 2008-Q1, page 1, **"2,239.4"** Subordinate voting shares– end of period. |

12.     No Rebuttal Comment, but the Court should be aware there are many more calculations

that can be submitted which will interconnect and expand upon the series of equations listed

in <u>Paragraph 12</u> of Mirarchi's motion for reconsideration, but they are not being submitted.

13.     No rebuttal responses are being submitted for <u>Paragraphs 13-17</u>, for the reason the points

being made will be repetitive to rebuttal comments already stated in <u>Paragraphs 6-10</u>.

14.     No Rebuttal Response.

15.     No Rebuttal Response.

16.     No Rebuttal Response.

17.     No Rebuttal Response.

18.     No Rebuttal Response.

19.     The Defendants say statements listed in <u>Paragraph 19</u> are *"false"*, however, the financial

industry News sites (web-links) below show the statements made regarding AMTrust are true.

- <u>https://www.barrons.com/articles/barrons-warned-you-first-amtrust-sinks-20-on-sec-probe-1491932917</u>
- <u>https://www.insurancebusinessmag.com/us/news/workers-comp/amtrust-insurance-subject-of-fbisec-probe-65108.aspx</u>

<u>Paragraph 19</u> also refers to a Markopolos interview at <u>https://kingworldnews.com/harry-</u>

<u>markopolos-broadcast-interview-available-now/</u> where at minutes (14:15 to 16:38) of this interview,

Markopolos says the insurance industry is 1 of 3 risk areas, if unaddressed, will be a catalyst

to a financial crisis not seen since the 1930s.  The interview where Markopolos says fraud is

endemic in the insurance industry, was conducted at the *Real Vision Network* **Dated:** Nov 1,

2016, with the **Title:** *Madoff Whistleblower Flags Next Big Financial Scandals*, **Time:**

(40:17) <u>https://www.realvision.com/tv/search/?parameters_query=Harry+Markopolos</u>, which the Real

Vision Interviewer recapped in a financial news blog, <u>https://www.zerohedge.com/news/2016-11-</u>

<u>16/fraud-endemic-insurance-industry-and-accountants-can%E2%80%99t-catch-cold</u> where Mr.

Markopolos says "... ... ... And I'm hoping that will be the catalyst for reform, hopefully for some congressional hearings and that we see national regulation of insurance and we see them become Basel compliant. Because there's lot of assets and liabilities there-- there's trillions in assets and liabilities there that are unregulated by anyone. ***And we don't know what the cross-risk exposures are.*** And so it's a recipe for a systemic disaster." **NOTE: Bold** and *Italicize* highlights added by Mirarchi. With this being said, no statements made in <u>Paragraph 19</u> of Mirarchi's motion were false.

Moreover, how this information is relevant to Mirarchi's claims, is the asset and debt cross risk exposures (i.e. where the asset and debt values interconnect) Markopolos speaks of, is what Mirarchi brought to the Court's attention in his 1st, 2nd, and 3rd, Motions for Relief using Math. And, because Mirarchi shows many of the Defendants Assets, Debts, Reinsurance Treaty No.'s interrelate with the values hidden under the guise of the untrue MSB-BVS-Express building appraisal reports, <u>Seneca 1395-1401</u>, this further supports his claims those records are untrue and falsified to deceive the Court, which is a criminal act.

20.     No Rebuttal Response.

21.     No Rebuttal Response.

22.     No Rebuttal Response.

23.     No Rebuttal Response.

24.     No Rebuttal Response.

25.     No Rebuttal Response.

26.     No Rebuttal Response.

27.     No Rebuttal Response.

28.     No Rebuttal Response.

29.     No Rebuttal Response.

30.     The Defendants say calculations are not credible, which isn't so.  The ones below connect

with the ones listed in Paragraph 30 of his motion, and show the Defendant's **878.2** Net

Written Premiums, which Mirarchi's insurance policy premiums were a part of, interrelate

with the their **$4,685.0** billion dollar Credit Default Swaps, the **9524** sum of the their Custom

Treaty No. **1142** and highest Pair Reinsurance Treaty No.'s, **1775, 2134, 2179,** and **2294,** and

lastly to Odyssey-re's end of year **60,242,949** shareholder equity, which is no coincidence.

| | | |
|---|---|---|
| $((SQRT(878.2)/60.242949)*9524) =$ | 4685.<u>0</u> | , is equal to Fairfax's 2008-Q2, page 8, **$4,685.<u>0</u>** (2007–nil) notional amount of credit default swaps. |
| $((4685.0/(9524/60.242949))^2) =$ | 878.<u>2</u> | , is equal Fairfax's 2008-Annual, page 7, "**878.<u>2</u>**" Net Written Premiums for Crum & Foster. |
| $((SQRT(878.2)/4685.0)*9524) =$ | 60.2429<u>88</u> | , is equal to, a -39 share difference, from Odyssey-re's 2008, "**60,242,9<u>49</u>**" Total Shareholder Equity Balance, end of year. |
| $(4685.0/(SQRT(878.2)/60.242949)) =$ | 952<u>4</u> | , is equal to the sum of Fairfax's Insurers "Custom" and highest paired value Property & Casualty re-Treaty No's, (1142+1775+2134+2179+2294) = 952<u>4</u>, whose inverse equal the "105" leverage factor, (1/0 9524) = 1 05 |

31.     Although the Defendants, and or Authorities are unwilling to confirm Sacred Geometry is

being used, it is, and the series of equations below continues to show what is known in

Sacred Geometry as **_Six minus Pi_**, is being used in the Defendants, and in other foreign and

domestic Business Moguls financially engineered leveraging schemes, which a good part of

is akin to counterfeiting.  This series will connect with the series from Paragraph 30.

NOTE: In the series below, "Pi()" is the Microsoft Excel Spreadsheet Function for "Pi"   You can swap it out with the two most commonly used values for Pi, "3.14159" or "3 1416" if you wish, using either value for "Pi" will only change the last digit in the 1st equation result listed below by +- 1, or off by 1   The rest of the equation results will stay the same

| | | |
|---|---|---|
| $((1227.9/878.2)/(6-Pi())) =$ | 0.48915<u>4</u> | , is equal to Odyssey-re's 2008-Annual, page 100, Dec. 31, 2007 (i.e Jan  01, 2008) "**489,1<u>54</u>**" Debt obligations, page 100. |
| $((878.2*0.489154)*(6-Pi())) =$ | 1227.<u>9</u> | , is equal to 2008-Annual, page 73, Dec. 31, 2007, i.e  Jan 1, 2008 "**1,227.<u>9</u>**" United States ongoing operations net premiums. |
| $((1227.9/0.489154)/(6-Pi())) =$ | 878.<u>2</u> | , is equal to Fairfax 2008-Annual, page 7, "**878.<u>2</u>**" Net Written Premiums for their Crum & Foster subsidiary. |
| $(1227.9/(878.2*0.489154)) =$ | 2.8584<u>1</u> | , is equal to _six minus pi_, (6-3.14159) = **2.8584<u>1</u>**. |
| $(6-(1227.9/(878.2*0.489154))) =$ | 3.1415<u>9</u> | , is equal to "Pi", commonly referred to as "**3.1415<u>9</u>**". |
| $(PI()+(1227.9/(878.2*0.489154))) =$ | 6.0000<u>0</u> | , is equal to the perfect number "**<u>6</u>**", commonly referred to as **6** parts to a **360** degree circle. |

32.    No Rebuttal Response.

33.    No Rebuttal Response.


Under FRCP Rule 60 (d) (1) or (3) the Court can set aside its ORDER GRANTING

Summary Judgment, for the reason of "fraud on the court", and rightfully reinstate this

litigation, and or Grant Mirarchi the right to issue a Subpoena to Marshall & Swift to show

and hold the Defendants accountable for the criminal acts they committed here in this Court.


**WHEREFORE**, Mirarchi respectfully asks the Court to reconsider and reverse its decision

denying reinstatement of his breach of contract and bad faith claim, and or to allow Mirarchi

permission to issue a subpoena along with a request to answer several short questions pertaining

to the functionality of their application software, so he can confirm the Defendants criminal act of

falsifying records and hold them accountable for the crimes they committed here in this Court.




Dated: February 19, 2019                        /s/ Ercole A. Mirarchi
                                                **Plaintiff, Pro-se**




**CC:** Securities and Exchange Commission
**CC:** FBI/DOJ

# EX. A

Subrogation is under investigation.

CLAIM RESOLUTION PLAN

1)ΠSecure a proof of loss for the requested advance of $100,000 00.
2)ΠConclude our Cause and Origin Investigation.
3)ΠConclude the Subrogation Investigation.
4)ΠConclude our loss and co-insurance valuations.
5)ΠNegotiate building, contents and BI losses.
6)ΠSecure the Tax Lien Clearance Certificate.
7)ΠSecure proof's of loss.
8)ΠResolve all outstanding issues.

**6/10/2008    04:56 pm   GCC                   File update**
Received a call from John Romano of Transatlantic, he wanted to know which line of business this is. I confirmed that it was written by company one and treaty 1142 applies for the Custom Property SSP Line.

**6/27/2008    03:07 pm   GCC                   File update**
Recieved a second report from McHenry

Cause of loss.

failure or breakdown in a light switch/wiring at the top of the basement stairs.

subrogation·

Not favorable.

Draft Request:

Valentine: $1,086.35.

McHenry: $5,387.96.

Future Handling

The insured and their PA re not cooperating. John sent them a coop letter and put on a 30 day diary.

We will diary for 30 Days.

# EX. B

| Eriole Miraschi | Case Type: PROPERTY | DOI: 05/08/2008 | LimDate: |
|---|---|---|---|
| Case #:214520   ( 8EEN041 ) | Class: | Assigned: LK | Date Opened: 05/13/2008 |

2/11/2010  06:43 AM                                                                              Page 6 of 29

## Case Notes Report

**7/8/2008      02:48 pm    GCC            File update**
Received thrid report.

Advance Request: $100,000.00.

**REDACTED**

Estimate Reserve:

Building▮▮▮▮▮. BPP:▮▮▮, Income▮▮▮. (unchanged)

Building Repair Estimate.

We received a building repair estmate from Cubit Construction, However, no estimate from the insured

Cubit puts the loss as follows:

RCV: $409,968.06
DEP: $ 78,190.64
ACV: $331,777.42
DED: $   2,500.00
NET: $329,277.42

Co Insurance:

RCV: Value: $999,611 65

After the application of depreciation co-insurance is not an issue on this ACV Policy.

John is having difficulty obtaining an estimate from the PA, and will continue in that area.

With regards to the Advance. I do not have an issue with the request against the claim.

08/22/2008 11:55 AM

## D'Alessandro, Robert

| | |
|---|---|
| **From:** | D'Alessandro, Robert |
| **Sent:** | Monday, May 12, 2008 3:17 PM |
| **To:** | Crapanzano, Greg |
| **Cc:** | John F. McHenry III |
| **Subject:** | New Loss - d/b/a Original George's Pizza House - 8EEN041 |

**Attachments:** A8fd2aa7e-cd4b-49e2-9d76-f6bb15c26348.PDF

REDACTED

A8fd2aa7e-cd4b-49
e2-9d76-f6bb1...

Greg,

New Loss attached. It's been assigned to J. McHenry. Extensive damages throughout.  Gave
him approval to assign C & O & CGM. Co-Ins. Issues - Total loss to Contents & Bus. Inc.
Preliminary Bldg. reserve ███████

Del

1

SENECA 1385
(PREVIOUSLY SENECA 0037)

# EX. C

Page 26

1  your experience, what qualifies you for the
2  position you had at the time that
3  Mr. Mirarchi's claim was being processed, or
4  reviewed, or handled by you?
5          MR. LEISE:  Note my objection.
6  I think that's two different questions.
7          MR. RICHMOND:  All right.
8          MR. LEISE:  So note an
9  objection to form.
10         The witness can answer it.
11         MR. RICHMOND:  Ail right.  Let
12 me rephrase it in a way that's acceptable.
13 BY MR. RICHMOND:
14 Q.   Let me have a description of your
15 background and experience up to and through
16 the end of 2009, what did you do?
17 A.   Up to 2009, I have been an insurance
18 adjuster since 1986.  I've been handling --
19 handling general liability, property,
20 Workers' Comp, automobile, physical damages,
21 I'm a general adjuster.  From 1997 to 2000,
22 1998 to 2001 I was a public adjuster.
23 Subsequent to that I came on board with
24 Seneca, because I wanted to get back into the

Page 27

1  company side.
2  Q.   Could you speak up, sir?  I'm...
3  A.   Yeah.  I said prior to Seneca I was a
4  Public Adjuster for three years.  Prior to
5  that I was a Senior Claims Representative for
6  CIGNA.  Prior to that I worked for Republic
7  Claims.  Prior to that I worked for
8  ITT Hartford as an Adjuster, all in the
9  field.
10 Q.   All right.  And what's your educational
11 background, sir?
12 A.   I have an Associate's degree in
13 theology.
14 Q.   All right.  And are there any other
15 additional educational courses you took in
16 order to qualify as either a public adjuster
17 or to qualify for the positions you've held
18 that you've just described?
19 A.   Yes.  I'm also a New York State
20 licensed general adjuster.  I'm licensed in
21 ten states as an adjuster.  And I have to
22 take 27 CEUs every two years to main those
23 licenses.  I also have an associate of
24 claims -- associate claims designation

Page 28

1  through the AICPCU organization.
2  Q.   All right.  And those courses and the
3  description of the licensing requirements
4  that you've given --
5  A.   Mm-hum.
6  Q.   -- does that give you some familiarity
7  with the rules and regulations that are
8  applicable to insurance claim processing?
9  A.   It does.  To the extent that those
10 courses and -- provide the knowledge, yes.
11 Q.   All right.  When did you commence your
12 employment with Seneca Specialty Insurance
13 Company?
14 A.   Seneca Specialty is another company
15 owned by the Seneca group of companies.  I
16 began working for Seneca Insurance Company,
17 Incorporated in 2001.
18 Q.   And in what capacity, what was your
19 position?
20 A.   Senior Adjuster, field.
21 Q.   All right.  So you worked outside of
22 the company, travelling, I take it?
23 A.   Travelling, adjusting losses, correct.
24 Q.   Okay.  Where were you physically

Page 29

1  located when you commenced that employment?
2  A.   The company or myself?
3  Q.   With the company, Seneca.
4  A.   The company is located at 160 Water
5  Street, New York City, New York 10038 on the
6  16th floor.
7  Q.   All right.  And that's where you
8  operated your adjusting activities out of?
9  A.   Well, I went to the office one to
10 two days a week and worked from my home the
11 balance of the time or from a hotel room.
12 Q.   All right.  As a -- as a field person?
13 A.   Correct.
14 Q.   Adjusting claims out in the field?
15 A.   Correct.
16 Q.   Okay.  In this particular case you were
17 employed by Seneca Specialty Insurance
18 Company; is that correct?
19 A.   Yes.
20 Q.   All right.  And when did you commence
21 your employment with Seneca Specialty?
22         MR. LEISE:  Can I just
23 interrupt for a minute?
24         You know, you're using the word

Page 30

1    "employed." Seneca Specialty is one of the
2    companies at Seneca. So he was working on
3    this claim for Seneca Specialty. I'm not
4    sure that was his employment, though, Ken.
5        Do you see what I'm saying?
6        MR. RICHMOND: All right.
7    Let's clarify that. Okay.
8        THE WITNESS: I'm not actually
9    employed by Seneca Specialty. I'm employed
10   by the Seneca group of companies, the Seneca
11   Insurance Company, which is a subsidiary or
12   owned by Crum & Forster, which is owned by
13   the Fairfax group of companies out of Canada.
14   BY MR. RICHMOND:
15   Q.   All right. So what is then Seneca
16   Specialty Insurance Company?
17       You don't receive your paycheck from
18   Seneca Specialty Insurance Company; is that
19   correct?
20   A.   That's correct.
21   Q.   All right. You receive it from Seneca
22   Insurance Company?
23   A.   No, sir, I'm paid by U.S. Fire.
24   Q.   All right. And U.S. Fire is who?

Page 31

1    A.   It's a company that's owned by Crum &
2    Forster.
3    Q.   All right. What is Seneca Specialty
4    Insurance Company?
5    A.   Seneca Specialty Insurance Company was
6    a company that was formed by the owners of
7    Seneca to conduct certain lines of business.
8    Q.   All right. And does Seneca Specialty
9    Insurance Company have their own employees,
10   as far as you know?
11   A.   No, they do not.
12   Q.   Okay. So Seneca Specialty actually has
13   no employees; is that correct?
14   A.   That I'm aware of.
15   Q.   Okay. What is the line of authority
16   between you and people above you at the
17   Seneca Insurance Company?
18       MR. LEISE: Mr. Richmond,
19   again, are you referencing the 2008/2009 --
20       MR. RICHMOND: Yes.
21       MR. LEISE: -- time frame?
22       MR. RICHMOND: Correct.
23       MR. LEISE: So the, you know,
24   question was "is," but it actually is

Page 32

1    referring to the pertinent time of this
2    claim, fair enough?
3        MR. RICHMOND: Fair enough.
4        MR. LEISE: Okay. I
5    just --there's a minor change since then, but
6    we're -- you know, we're referring back to
7    the time in question again.
8    BY MR. RICHMOND:
9    Q.   Yeah, all my questions are directed to
10   the time relating to this policy, its
11   issuance up to the point where the final
12   claims or the claim was finally adjusted or
13   resolved.
14   A.   My position in the company changed in
15   that time frame.
16   Q.   All right. And what did it change to?
17   A.   Vice President of Property Claims,
18   currently.
19   Q.   All right. From what?
20   A.   Senior Adjuster.
21   Q.   Okay. And during the period of
22   Mr. Mirarchi's --
23   A.   Just to clarify, I was a Senior
24   Adjuster, and then I was an Assistant Vice

Page 33

1    President and then recently promoted to Vice
2    President. That's the chain.
3    Q.   All right. And at the time of
4    Mr. Mirarchi's claim --
5    A    Yes.
6    Q.   -- up to the point when it was
7    resolved, what was the line of authority
8    above you?
9    A.   Can you explain "authority"?
10   Q.   All right. Well, who's Mel Funk, for
11   example?
12   A.   Mel Funk was a former Vice President of
13   Claims at Seneca Insurance Company.
14   Q.   All right. At the time of
15   Mr. Mirarchi's claim, did you report to him?
16   A.   In the beginning, yes.
17   Q.   All right. And in the beginning,
18   you're saying in the beginning you did.
19   A.   Yes.
20   Q.   At some point in Mr. Mirarchi's claim
21   did you no longer have to report to Mel Funk?
22   A.   Yes.
23   Q.   Was Mr. Mel Funk separated from the
24   company?